IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA, §
§
        Plaintiff, §
§
v. § CRIMINAL NUMBER H-19-172
§
FRED SAMSON, §
§
        Defendant. §

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant's Motion for a Judgment of Acquittal and, in the Alternative, Motion for New Trial ("Motion for Acquittal") (Docket Entry No. 64). For the reasons stated below, Defendant's Motion for Acquittal will be denied.

### I. Factual and Procedural Background

The United States charges that Fred Samson stole government property through a scheme to continue receiving Social Security retirement benefits that were payable to his mother and father, Katarzyna and Stanislaw Bernat, after they died. Samson's father and mother died in Poland on June 26, 1995, and December 1, 1995, respectively.[1] The Social Security Administration continued

---

[1] English Translation of Katarzyna Bernat Death Certificate, Government's Exhibit No. 1.1; English Translation of Stanislaw Bernat Death Certificate, Government's Exhibit No. 2.1.

dispersing monthly retirement benefits to them for almost 22 years after their deaths.[2] Samson does not dispute that the evidence shows that he negotiated United States Treasury checks intended for his parents between 1998 and 2013.[3] Starting in 2008 and 2013 the payments were directly deposited into joint bank accounts in Samson's and his mother and father's names, respectively.[4] Samson does not dispute that the evidence shows that he withdrew the benefits paid into these accounts on a monthly basis until 2017.[5] To prove that Samson collected the benefits knowing his parents were deceased, the government produced evidence that Samson traveled to Europe shortly after each of his parents died in Poland,[6] that he created and managed the joint bank accounts

---

[2]SSA Payments to Katarzyna Bernat, Government's Exhibit No. 15; SSA Payments to Stanislaw Bernat, Government's Exhibit No. 16.

[3]See United States Treasury Checks to Stanislaw Bernat, Government's Exhibit No. 21.

[4]Transcript [First Day of Jury Trial] ("Tr. I"), Docket Entry No. 69, pp. 68-69; SSA Correspondence to Katarzyna Bernat, Government's Exhibit No. 7; SSA Correspondence to Stanislaw Bernat, Government's Exhibit No. 8.

[5]J.P. Morgan Chase Bank Statements, Government's Exhibit Nos. 18.2-18.4; BBVA Compass Bank Records, Government's Exhibit Nos. 19.2-19.5.

[6]Border Crossing Records of Fred Samson, Government's Exhibit No. 22.

through forgery and fraud,[7] and that he made a statement admitting that he had knowingly used their benefits since they died.[8]

Fred Samson was indicted by a grand jury on March 6, 2019, on two counts of theft of government property greater than $1000 in violation of 18 U.S.C. § 641.[9] A superseding indictment was filed on August 29, 2019.[10] Count One consolidates all the money alleged taken intended for Stanislaw into a single count, and Count Two consolidates that intended for Katarzyna.[11] Samson was tried before a jury beginning on November 4, 2019.[12] On November 5, 2019, the second day of trial, Samson requested a jury instruction on a statute of limitations defense, which the court denied.[13] The same

---

[7]The government presented evidence that in 2011 someone had forged Stanislaw's signature on a form for a signature bank card for his and Samson's joint bank account. Transcript [Second Day of Jury Trial] ("Tr. II"), Docket Entry No. 72, p. 34; BBVA Compass Signature Card, Government's Exhibit No. 19.1. The government also presented testimony that suggested in 2008 Samson must have appeared at a bank branch with someone who posed as Katarzyna and forged her signature to open the joint account in his and her names. Tr. II, Docket Entry No. 72, pp. 18-20; J.P. Morgan Chase Signature Card, Government's Exhibit No. 18.1. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[8]Fred Samson Statement, Government's Exhibit No. 3.

[9]Criminal Indictment, Docket Entry No. 1, p. 1.

[10]Superseding Criminal Indictment, Docket Entry No. 21.

[11]Id. at 1-2.

[12]Minute Entry [First Day of Jury Trial], Docket Entry No. 53.

[13]Proposed Jury Instructions by Fred Samson, Docket Entry No. 52, p. 3; Minute Entry [Second Day of Jury Trial], Docket Entry No. 54.

day the jury unanimously found Samson guilty on both counts.[14]  On November 22, 2019, Samson filed a motion for a judgment of acquittal as to both counts on the ground that the government failed to prove certain elements of the charged offense and failed to prove that the offenses occurred within the limitations period.[15]  In the alternative, Samson seeks a new trial on the ground that the court failed to instruct the jury on his statute of limitations defense.  The government filed a response on December 16, 2019,[16] and Samson replied on December 23, 2019.[17]

## II.  Standard of Review

In determining whether the prosecution introduced sufficient evidence to sustain a conviction, the court must determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.  United States v. Valle, 538 F.3d 341, 344 (5th Cir. 2008) (quoting Jackson v. Virginia, 99 S. Ct. 2781, 2789 (1979)).  Rather than deciding whether the jury reached the correct verdict, the court must only

---

[14]Jury Verdict, Docket Entry No. 56, p. 1.

[15]Defendant's Motion for Acquittal, Docket Entry No. 64.

[16]United States' Response to Defendant's Motion for a Judgment of Acquittal and, in the Alternative, for a New Trial ("Government's Response"), Docket Entry No. 71.

[17]Reply to the Government's Response to Defendant's Motion for a Judgment of Acquittal and, in the Alternative, Motion for New Trial ("Defendant's Reply"), Docket Entry No. 74.

determine whether the jury's verdict was rational. <u>United States v. Ramos-Garcia,</u> 184 F.3d 463, 465 (5th Cir. 1999).

The court must view the evidence and the inferences that may be drawn therefrom in the light most favorable to the jury's verdict. <u>United States v. Patino-Prado,</u> 533 F.3d 304, 308 (5th Cir. 2008). If, however, the evidence "'gives equal or nearly equal circumstantial support to a theory of guilt or innocence,' the court should reverse because 'under these circumstances a reasonable jury must necessarily entertain a reasonable doubt.'" <u>Id.</u> at 309 (quoting <u>Ramos-Garcia,</u> 184 F.3d at 465).

### III. <u>Analysis</u>

The superseding indictment alleges that Fred Samson "did knowingly and willfully steal, purloin, and convert to his own use and the use of another, money of the United States" in a continuing course of conduct between June of 1995 and November of 2017, violating 18 U.S.C. § 641.[18] Samson argues that the government failed to prove that he committed a knowing theft or conversion within the five-year limitations period and that the money allegedly stolen was "money of the United States" under the meaning of the statute. The government contends it sufficiently proved each element of the offenses.

---

[18] Superseding Criminal Indictment, Docket Entry No. 21, pp. 1-2.

## A. Acts of Theft or Conversion and Limitations

Samson argues that the government produced no evidence that he committed a theft or knowing conversion within § 641's five-year limitations period.[19] He contends that the only acts that occurred within the limitations period were his withdrawal of funds from the joint bank accounts, which he argues does not constitute theft or conversion. The government responds that Samson waived any limitations defense by failing to raise it before trial, that theft or conversion under § 641 may be charged as a continuing offense, and that the evidence supports that Samson converted the money within the 5-year limitation period.[20]

### 1. Waiver

The government argues Samson should have raised his limitations defense before trial. Rule 12 requires that defendants raise objections and defenses on the basis of a defect in the indictment before trial if the motion can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3). But a limitations defense often turns on disputed factual issues. United States v. Lewis, 774 F.3d 837, 845 (5th Cir. 2014). The court may therefore only decide a limitations issue before trial if its validity is apparent from the face of the indictment with the facts alleged in

---

[19]Motion for Acquittal, Docket Entry No. 64, p. 7.

[20]Government's Response, Docket Entry No. 71, pp. 5, 9-11.

-6-

the indictment assumed true. United States v. Treacy, 677 F. App'x 869, 873 (4th Cir. 2017); United States v. Ramirez, 324 F.3d 1225, 1227-28 (11th Cir. 2003).

The superseding indictment charged Samson with two counts based on continuous conduct from June of 1995 to November of 2017, which straddles the limitations period that would have begun on March 6, 2014, five years before the original indictment. Even if the offense charged is not a continuing offense, the government may rely on such an indictment to obtain a conviction based on conduct within the limitations period. United States v. Askia, 893 F.3d 1110, 1120 (8th Cir. 2018). Samson's limitations defense therefore depends on whether the government proved that he committed a theft or conversion on or after March 6, 2014. Samson was not required to raise this fact-dependant defense before trial under Rule 12 and, accordingly, has not waived it. See United States v. Bucheit, 134 F. App'x 842, 849 (6th Cir. 2005) (holding that an "at least partially factual" limitations argument raised for the first time at trial was timely).

2. Continuing Violation

The government argues Samson's conviction may be sustained by evidence of conduct outside the five-year limitations period because Samson's conduct from 1995 to 2017 constituted a continuing offense. The doctrine of continuing offenses applies only in limited circumstances, which the Supreme Court defined in Toussie

v. United States, 90 S. Ct. 858, 860 (1970). The court construes an offense as continuing only when "(1) 'the explicit language of the substantive criminal statute compels such a conclusion,' or (2) 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.'" United States v. Tavarez-Levario, 788 F.3d 433, 437 (5th Cir. 2015) (quoting Toussie, 90 S. Ct. at 860). The government concedes the text of § 641 does not explicitly provide that the offense is continuing, and argues only that "the nature of the crime involved" compels such a conclusion.[21]

The federal circuits are split as to whether under Toussie § 641 may be construed as a continuing offense. In United States v. Smith, 373 F.3d 561, 567 (4th Cir. 2004), the court held that embezzlement under § 641 may be a continuing offense "[a]t least in those cases where the defendant create[s] a recurring, automatic scheme." One judge dissented, arguing that the inherent nature of embezzlement is not continuing and that the majority had incorrectly considered the defendant's specific conduct rather than the nature of the crime. Id. at 569 (Michael, J., dissenting). The Second Circuit agreed with the Smith dissent and concluded that embezzlement, theft, and conversion under § 641 are not by their nature continuing offenses. United States v. Green, 897 F.3d 443, 448-49 (2d Cir. 2018). District courts have also split on this

---

[21]Government's Response, Docket Entry No. 71, p. 8.

question.  See, e.g., United States v. Brunell, 320 F. Supp. 3d 246, 248 (D. Mass. 2018) (holding that violations of § 641 may be continuing); United States v. Reese, 254 F. Supp. 3d 1045, 1049 (D. Neb. 2017) (holding violations of § 641 are not continuing).

While the Fifth Circuit has not addressed whether § 641 is a continuing offense, it has given guidance in the context of other statutes:  "[U]nder Toussie, the analysis of whether a crime constitutes a continuing offense involves examining the offense itself, not the defendant's particular conduct." Tavarez-Levario, 788 F.3d at 440.  This contravenes the reasoning in Smith that § 641 violations may be a continuing offense because in particular cases the offense might be part of a repetitive, recurring scheme that runs over a long period of time.  See Smith, 373 F.3d at 567-68; see also Brunell, 320 F. Supp. 3d at 248.  Smith requires courts to consider the particular conduct of the defendant in order to determine whether "the defendant created a recurring, automatic scheme" before it can determine if the offense was continuing.  373 F.3d at 567-68.  Because the Fifth Circuit has expressly held this court should not consider the defendant's specific conduct, the court declines to follow Smith and other courts that have looked to the defendant's specific conduct to find that a crime may sometimes be continuing; instead, the court will look solely to the crime as defined in the statute.

For a crime to be construed as continuing in the absence of explicit text, it must be by its nature a renewing and continuing

process rather than a single act.  Toussie, 90 S. Ct. at 864.  The crime's continuing nature must be unequivocally clear.  Id.  "'The hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that each day brings a renewed threat of the evil Congress sought to prevent even after the elements necessary to establish the crime have occurred.'"  Tavarez-Levario, 788 F.3d at 436-37 (quoting United States v. Yashar, 166 F.3d 873, 875 (7th Cir. 1999)).  Some actual element or action inherent to the offense must involve "ongoing perpetration" that has "temporal longevity."  Id. at 440.  An example of a crime that is continuous by its nature is kidnapping because the illegal detention persists until the victim is emancipated.  United States v. Garcia, 854 F.2d 340, 343-44 (9th Cir. 1988).  Crimes that are not continuing are complete as soon as each of the elements is met, even if the offender continues to reap benefits from his crime long after its completion.  Tavarez-Levario, 788 F.3d at 440.  For example, the use of a counterfeit or fraudulently obtained immigration document is not a continuing offense because each single use is a crime, even though the offender may reap continued benefits from the offense such as entry into the United States and employment.  Id.

The court agrees with Green and other courts that have concluded embezzlement, stealing, and knowing conversion under § 641 are not by their nature continuing offenses.  A violation under § 641(a) is complete as soon as the offender unlawfully takes or misappropriates money or a thing of value of the United States.  While the statute defines a broad range of conduct, the conduct

-10-

does not inherently continue. Reese, 254 F. Supp. 3d at 1050. That the conduct described in the statute can sometimes be part of a covert, long-term scheme to repeatedly steal small sums of money does not unequivocally show the crime is by its nature continuing as Toussie requires. See Reese, 254 F. Supp. 3d at 1050; contra Smith, 373 F.3d at 567-68. The court concludes that § 641 is not a continuing offense, and therefore the government must prove that Samson violated § 641 within the five-year limitations period.

3. Acts Within the Limitations Period

Samson argues that the government failed to prove he committed any stealing or knowing conversion within the five-year limitations period.[22] Because the original indictment was filed on March 6, 2019, the government needed to prove Samson violated the statute on or after March 6, 2014. See 18 U.S.C. § 3282(a) (providing a general five-year limitations period for federal offenses). The government argues Samson knowingly converted the Social Security benefits when he withdrew them from the joint bank accounts, which he did many times during the five-year period.[23] Samson responds that those bank withdrawals do not constitute stealing, purloining, or knowing conversion — the conduct alleged in the indictment.[24]

---

[22]Motion for Acquittal, Docket Entry No. 64, p. 7.

[23]Government's Response, Docket Entry No. 71, p. 11.

[24]Motion for Acquittal, Docket Entry No. 64, p. 7; Defendant's Reply, Docket Entry No. 74, pp. 10-12.

Samson argues that as a co-owner of the accounts he could not "wrongfully take" the money the government mistakenly deposited there.[25] But Samson cites no authority that a person cannot wrongfully take money that he knows has been incorrectly but voluntarily deposited into his bank account. Samson points only to the principle that a bank that pays a check with a forged endorsement loses its own money rather than the money of a depositor. See United States v. Evans, 572 F.2d 455, 474 n.20 (5th Cir. 1978). This rule does not apply here because Samson did not withdraw the money in the joint checking accounts by forging checks or endorsements.

In United States v. Venti, 687 F.3d 501, 503 (1st Cir. 2012), the government continued depositing the defendant's father's federal Civil Service Retirement System benefits into the defendant and his father's joint checking account long after the father had died. The defendant was charged with converting federal money under § 641. Id. at 502. The conversions that formed the basis of his conviction were the cashing of checks to withdraw the money from the accounts after it was deposited. Id. at 504. Similarly, the Fourth Circuit affirmed a conversion conviction under § 641 based on a veteran's withdrawal and use of salary payments erroneously deposited into his checking account after he had left active duty service. United States v. Osborne, 462 F. App'x 366, 367 (4th Cir. 2012) (per curiam). These cases demonstrate that the

---

[25]Motion for Acquittal, Docket Entry No. 64, p. 9.

taking element for conversion under § 614 is satisfied when a defendant knows money was erroneously deposited into his bank accounts and withdraws the money to appropriate it for his own use. This is consistent with the court's jury instruction that to "steal" or "knowingly convert" only requires that the defendant cause "[a]ny appreciable change of the location of the property with the intent to deprive constitutes a stealing . . . ."[26]

The government produced evidence that Samson visited Poland shortly after each of his parents' deaths, that he had fraudulently used joint bank accounts in his deceased parents' names, and that he had admitted to using the retirement benefits despite knowing they were deceased.[27] The jury could have rationally relied on this evidence to conclude that Samson knew the money was mistakenly deposited into the joint bank accounts and did not belong to him. Based on this conclusion, the jury could have reasonably found that Samson withdrew the money from the bank accounts with the intent to deprive the United States, thereby converting it. The government provided evidence that Samson withdrew his father's benefits on a monthly basis until January of 2017 and his mother's benefits until November of 2017.[28] The dozens of withdrawals that occurred after March 6, 2014, suffice to support Samson's conviction, and

---

[26]Court's Instructions to the Jury, Docket Entry No. 55, p. 11.

[27]See supra notes 6-8.

[28]J.P. Morgan Chase Bank Statements, Government's Exhibit No. 18.4; BBVA Compass Bank Records, Government's Exhibit No. 19.5.

accordingly he is not entitled to a judgment of acquittal on his statute of limitations defense.

Samson also argues that his bank withdrawals are properly characterized as embezzlement, not conversion, and the government failed to allege embezzlement in the indictment. But conversion and embezzlement are not mutually exclusive categories; embezzlement is better characterized as a specific type of conversion. United States v. Stockton, 788 F.2d 210, 216 (4th Cir. 1986) ("The central element of the traditional concept of embezzlement is the conversion of property belonging to another. . . . [E]mbezzlement builds on the concept of conversion . . ."). Embezzlement and conversion are both "wrongful takings," and embezzlement only adds the additional elements that the money came lawfully into the defendant's possession and that the defendant intentionally took or used the money in a way contrary to the owner's intent. Stockton, 788 F.2d at 216-17; Fifth Circuit Pattern Jury Instruction § 2.27. Furthermore, § 641(a)'s grouping of "embezzlement, stealing, purloining and knowing conversion" is not a list of distinct crimes; it is a combination of similar, overlapping acts grouped together "to avoid gaps and loopholes between [the] offenses . . . without, however, departing from the common-law tradition." Morissette v. United States, 72 S. Ct. 240, 272, 273 (1952). Accordingly, Samson's argument that the withdrawals could not have been theft or knowing conversions as charged in the indictment because they were embezzlements has no merit.

B.  **Money of the United States**

Section 641 applies to the embezzlement, theft, or conversion of "any record, voucher, money, or thing of value of the United States or of any department or agency thereof." 18 U.S.C. § 641. The indictment charged Samson with knowing and willful theft, purloining, and conversion of money of the United States.[29] Samson argues that the evidence was insufficient to prove the money at issue was "money or a thing of value of the United States."[30]

The test "for when federal funds lose their federal character is measured by the control exercised by the federal government over the ultimate disposition of the funds." United States v. Long, 996 F.2d 731, 732 (5th Cir. 1993) (recognized as overruled on other grounds, United States v. Long, 562 F.3d 325, 330 n.1 (5th Cir. 2009)). "[M]oney . . . of the United States" does not lose its status as such when it is deposited into a bank account. Evans, 572 F.2d at 474. "As a matter of law, the Government retained an ownership interest for purposes of § 641 in the erroneously-issued funds." Osborne, 462 F. App'x at 367. Even though the United States voluntarily deposited funds into Samson's bank accounts, it was entitled to recover those funds because the benefits were mistakenly paid. See 42 U.S.C. § 404(a)(1)(A) (permitting the Social Security Administration to recover mistaken

---

[29]Superseding Criminal Indictment, Docket Entry No. 21, pp. 1-2.

[30]Motion for Acquittal, Docket Entry No. 64, p. 11.

overpayments); <u>United States v. Whitaker,</u> 735 F. App'x 672, 676 (11th Cir. 2018) (per curiam) (holding that the government retained a property interest in erroneously paid Social Security benefits); <u>accord United States v. Miller,</u> 520 F.2d 1208, 1210 (9th Cir. 1975) (holding that the government suffered a property loss where it erroneously paid money that was not returned). Thus, the funds retained their federal character even after being deposited in the joint bank accounts.

At trial the government presented testimony explaining that the money continued to belong to the United States because the intended beneficiaries were deceased and that the government may reclaim erroneous payments from bank accounts.[31] The government also presented evidence that the joint bank accounts were created to receive the Social Security benefits by direct deposit.[32] Because the intended recipients were deceased and the money was paid in error, the money remained of federal character after being deposited and this evidence was sufficient for a rational jury to conclude that Samson withdrew money of the United States from the accounts. Accordingly, Samson is not entitled to a judgment of acquittal on insufficiency of the evidence as to this element.

---

[31]Tr. II, Docket Entry No. 72, pp. 90-93.

[32]Tr. I, Docket Entry No. 69, pp. 68-69; SSA Correspondence to Katarzyna Bernat, Government's Exhibit No. 7; SSA Correspondence to Stanislaw Bernat, Government's Exhibit No. 8.

C.  Motion for New Trial

In the alternative to his motion for acquittal, Samson argues that the court should vacate his conviction and order a new trial under Fed. R. Crim. Proc. 33 because it did not instruct the jury on his statute of limitations defense.[33]  The government argues that the court properly refused to give the instruction because it was not legally correct.[34]

Rule 33 permits a court to vacate a judgment and grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  United States v. Wright, 634 F.3d 770, 775 (5th Cir. 2011).  The Fifth Circuit has generally held that a trial court should not grant a motion for new trial "'unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.'"  Id. (quoting United States v. Wall, 389 F.3d 457, 466 (5th Cir. 2004).  "'A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant.'"  Id. (quoting Wall, 389 F.3d at 466).  The Fifth Circuit has cautioned district courts to exercise their discretion to grant a new trial only in exceptional circumstances.  See United States v. Scroggins, 485 F.3d 824, 831 (5th Cir. 2007).

A district court is obligated to give a requested jury instruction "only if the proposed instruction (1) is substantially

---

[33]Motion for Acquittal, Docket Entry No. 64, p. 13.

[34]Government's Response, Docket Entry No. 71, p. 16.

correct, (2) is not substantively covered in the jury charge, and (3) pertains to an important issue in the trial, such that failure to give it seriously impairs the presentation of an effective defense." United States v. Davis, 609 F.3d 663, 689 (5th Cir. 2010). Samson requested the following jury instruction, in relevant part:

> To convict the defendant on either count one or count two of the indictment, you must find that the government established beyond a reasonable doubt that all of the elements of the offense charged occurred within five years of the date of the indictment.
>
> That is, the government must establish beyond a reasonable doubt that all elements of the offense charged in the indictment occurred after March 6, 2014.
>
> You have seen and heard evidence of the defendant's conduct prior to March 6, 2014, but this conduct does not establish a basis for conviction. You may consider such conduct solely to aid your determination, if you find that it does aid your determination, of whether the defendant committed the offense charged in the indictment after March 6, 2014.[35]

This instruction is not legally correct. First, the limitations period typically runs when an offense is completed, meaning each element of the offense has occurred. Yashar, 166 F.3d at 876 (citing Toussie, 90 S. Ct. at 860). Samson's proposed instruction that all elements must occur within the limitations period incorrectly suggests that the statute of limitations begins

---

[35]Defendant's Proposed Jury Instructions, Docket Entry No. 52, p. 3.

to run when the first element comes into existence but the crime has not yet been completed. Second, the court instructed the jury that the government was required to prove that Samson knew that the money was not his and that he intended to deprive the owner of it.[36] The court also instructed the jury that prior similar acts are admissible to prove the defendant's intent.[37] Samson's proposed instruction incorrectly states that the jury may not consider his acts prior to March 6, 2014, "as a basis for conviction," because the jury is permitted and may have needed to rely on those acts to conclude he had the correct mental state to commit the offense.

Furthermore, Samson's limitations defense depends on his mistaken theory that his withdrawals from the joint bank accounts were not thefts or knowing conversions. As explained above, this is incorrect; the withdrawals made after March 6, 2014, are sufficient to support his conviction. The court concludes that it did not have to give Samson's proposed limitations instruction to the jury because the instruction was not correct and Samson was not harmed by the refusal. Accordingly, Samson has not demonstrated that the interest of justice requires that he be granted a new trial under Rule 33.

---

[36] Court's Instructions to the Jury, Docket Entry No. 55, p. 11.

[37] Id. at 9.

## IV. Conclusions and Order

Defendant's statute of limitations defense does not warrant acquittal as a matter of law, and he is not entitled to a new trial. Defendant's Motion for a Judgment of Acquittal and, in the Alternative, Motion for New Trial (Docket Entry No. 64) is **DENIED**.

**SIGNED** at Houston, Texas, on this 15th day of January, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE