IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:19-CR-00172-S |
| | § | |
| FRED SAMSON, | § | |
| aka ALFRED BERNAT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are the United States' Motion for an Order to Show Cause, Docket Entry No. 96, and the defendant's Ex Parte Motion for Public Defender's Office to Continue Representation on Appeal, Docket Entry No. 118. For the reasons stated below the United States' motion will be granted and the defendant will be ordered to make a one-time payment of $ 38,135.16 to reimburse the Criminal Justice Act ("CJA") Trust Fund for the cost of his court appointed counsel. The defendant's motion for the Public Defender's Office to continue representation on appeal will also be granted.

## I. Factual and Procedural Background

Fred Samson was indicted by a grand jury on March 6, 2019, on two counts of theft of government property greater than $1,000.00

in violation of 18 U.S.C. § 641.[1]  A superseding indictment was filed on August 29, 2019.[2]  Samson was tried before a jury beginning on November 4, 2019.[3]  On November 5, 2019, the jury unanimously found Samson guilty on both counts.[4]  On November 22, 2019, Samson filed a motion for judgment of acquittal as to both counts,[5] which the court denied.[6]

On January 9, 2020, the Government filed an objection to ¶ 43 of the Presentence Report ("PSR") asserting that the "Defendant's assets are incomplete, as he failed to disclose, and the asset search conducted by Probation failed to reveal, additional real property owned by the Defendant."[7]  The United States asserted:

> According to the . . . PSR, defendant's real property is limited to his residence, which he values at $300,000.  PSR ¶ 43.  Harris County Appraisal District records confirm defendant owns his residence located at 1143 Yale Street, Houston, Texas, but values the property at $453,000 rather than $300,000.  *See* Exhibit 1.  The land alone is appraised at more than $400,000.  *See id.*
>
> An asset search conducted by Probation did not reveal any additional real property owned by defendant.  PSR ¶ 43.  However, a review of Harris County Appraisal

---

[1]Criminal Indictment, Docket Entry No. 1, p. 1.

[2]Superseding Criminal Indictment, Docket Entry No. 21.

[3]Minute Entry [First Day of Jury Trial], Docket Entry No. 53.

[4]Jury Verdict, Docket Entry No. 56, p. 1.

[5]Defendant's Motion for Acquittal, Docket Entry No. 64.

[6]Memorandum Opinion and Order, Docket Entry No. 77.

[7]United States Objections to the Presentence Investigation Report, Docket Entry No. 75, p. 1.

District records under defendant's former name, Alfred Bernat, reveals two more real properties he did not disclose to Probation in his Personal Financial Statement. One property, located at 5703 Brock Street, Houston, Texas, is valued at $76,834. <u>See</u> Exhibit 2. The other property, described as Lots 382, 383, 724, and 725, Cottage Grove Section 3, located on Larkin Street in Houston, Texas, is valued at $325,000. <u>See</u> Exhibit 3.[8]

The total value of defendant's real property, including two properties where he does not reside, is $854,834. The United States objects to paragraph 43 of the initial PSR as being inaccurate and incomplete and respectfully requests that the PSR be amended to reflect the above information.[9]

On January 24, 2020, the Probation Officer filed an Addendum to the PSR containing the following response to the United States' objection to ¶ 43:

After further review, the probation officer concurs with counsel for the Government and revises the PSR via this Addendum, and incorporates the following financial-related information into Paragraph 43 of the PSR:

According to the Harris County Appraisal District, the defendant's residence located at 1143 Yale Street, in Houston, Texas, reflects an appraised value of approximately $453,000.

. . .

---

[8]<u>See</u> <u>id.</u> at 2 n. 1 ("While Exhibit 3, obtained from the Harris County Appraisal District website on October 22, 2019, lists 'Alfred Bernat' as the owner of the property on Larkin Street, a current search of the website reveals the owner simply as 'current owner.' A call to the Harris County Appraisal District confirmed that the property has not been recently transferred or sold and that defendant remains the owner of the property.").

[9]<u>Id.</u> at 1-2. <u>See also</u> Printouts from the Harris County Appraisal District's website for the referenced properties, Exhibits 1-3, Docket Entry No. 76.

Additionally, the Harris County Appraisal District reflects there are two additional properties under the defendant's alias, Alfred Bernat, both of which are located at 0 Larkin, Houston, Texas, 77007, and 5703 Brock Street, Houston, Texas, 77023. Both properties are vacant lots and valued at approximately $325,000 and $76,834, respectively.[10]

On February 25, 2020, the United States filed United States' Motion to Unseal Financial Affidavit (Docket Entry No. 89), urging the court "to unseal the financial affidavit submitted by defendant on July 26, 2018, under magistrate case number 18-MJ-1191."[11] The United States argued:

> On July 26, 2018, defendant appeared before the United States Magistrate Christina A. Bryan and requested court-appointed counsel. In support of this request, the defendant submitted a financial affidavit. This affidavit is filed under seal under magistrate case number 18-MJ-1191. The magistrate granted defendant's request and appointed the Federal Public Defender's Office to represent defendant at no cost to defendant. . .

> Defendant owns three parcels of real property appraised at approximately $854,834. Addendum to PSR. Defendant did not disclose two of these properties, vacant lots, appraised at approximately $401,834, to the Probation officer conducting the presentence investigation. *Id.*

> The United States has not seen what, if any, assets defendant listed on his financial affidavit. However, given the fact that he failed to disclose these assets to Probation and the fact that the magistrate appointed a free attorney for defendant, the United States suspects he did not disclose all of his real property assets to the magistrate when he requested counsel. This

---

[10]Addendum to the Presentence Report, Docket Entry No. 80, p. 1.

[11]United States' Motion to Unseal Financial Affidavit, Docket Entry No. 89, p. 2.

information is relevant at sentencing because, "lying to a judicial officer to obtain appointed counsel qualifies as obstruction of justice under the Guidelines." <u>United States v. Iverson</u>, 874 F.3d 855, 860 (5th Cir. 2017).[12]

On March 3, 2020, the court entered an Order (Docket Entry No. 90), granting the United States' motion to unseal defendant's financial affidavit in magistrate case number 18-MJ-1191. On his financial affidavit signed on July 26, 2018, defendant stated that he has not worked since August 20, 1985, he receives $1,600 in Social Security disability payments, he has an unidentified amount of cash on hand, he owns real property located at 1143 Yale valued at $400,000, and he has one dependent, his brain damaged son.[13]

On March 4, 2020, the defendant responded to the United States' objections to the PSR arguing in pertinent part that defendant's "failure to disclose two properties in the presentence interview is 'incomplete' information that should not qualify for the obstruction enhancement."[14] Defendant added:

> Mr. Samson is 70 years of age and has not worked since 1986. As the PSR Addendum indicates, the properties at issue are vacant lots. As exhibits to the Governments PSR Objections demonstrate, the value of the properties is based solely on land value. Mr. Samson simply did not recall the properties during the interview, he was not intentionally or willfully seeking to deceive or withhold

---

[12]<u>Id.</u> at 1-2.

[13]Financial Affidavit, Docket Entry No. 2, Case 4:18-mj-01191.

[14]Defendant's Response to United States' Objections to the Presentence Investigation Report, Docket Entry No. 91, p. 1.

material information.   Mr.  Samson  believes  that  he
purchased the properties in the late 1970s. . .[15]

On  March 10, 2020, the United States filed the pending Motion

for an Order to Show Cause urging the court to

> hold  an  evidentiary  hearing  to  determine  (1)  whether
> defendant remains eligible for court-appointed counsel
> during the pendency of any appeal, and (2) whether the
> defendant  possesses  the  present  financial  ability  to
> reimburse  the  government  for  the  costs  of  his  legal
> defense.[16]

On  March  12,  2020,  the  court  sentenced  the  defendant  to

fifteen (15) months as to each count, to run concurrently, for a

total  of  fifteen  months,  three  (3)  years  of  supervised  release,

restitution  in  the  amount  of  $16,900.00  to  the  Social  Security

Administration,  and  a  special  assessment  of  $200.00.[17]   The  court

found  that  "[t]he  defendant  does  not  have  ability  to  pay  a  fine  in

addition to restitution.  So no fine will be imposed."[18]  During the

sentencing hearing the court found that

> .  .  .  the  defendant  made  a  false  statement  to  the
> magistrate judge under penalty of perjury, and that the
> statement  was  material  to  whether  counsel  would  be
> appointed  to  represent  the  defendant  at  government
> expense, and whether he should be required to make any
> payment, partial or otherwise.

---

[15]Id. at 3.

[16]United  States'  Motion  for  an  Order  to  Show  Cause,  Docket
Entry No. 96, p. 1.

[17]See  Minute  Entry  for  March  12,  2020.   The  Judgment  was
entered on March 13, 2020.  See Judgment in a Criminal Case, Docket
Entry No. 102.

[18]Hearing Transcript, p. 15:23-25.

> The credible evidence establishes that, by a preponderance of the evidence, the defendant made this false statement willfully in order to avoid having to pay for his attorney.
>
> The defendant's whole modus operandi in this case and fil[ing of] the affidavit in particular, reflects a false attempt to seek benefits from the United States to which he is not entitled.
>
> The defendant basically has no compunction about lying when it benefits him financially.
>
> So the government's objection is sustained. The offense level will be increased by two levels.[19]

The defendant testified that he could not afford an attorney because he did not have any cash to pay an attorney.[20]

After sentencing the defendant, the court conducted an evidentiary hearing on the pending motion to show cause.[21] When asked what relief the United States was seeking, counsel stated that "[t]hat [the defendant] reimburse the Criminal Justice Act Trust Fund."[22] The defendant did not dispute that he owns the real properties identified in the Addendum to the PSR. Instead, he testified:

> I'd like to sell the property, but no takers. And they offered me much below price of the pricing of the things. And they brought it -- they, you know, the townhouse is worth 600, $700,000, then they make I've been having this property from 1977 and cost exists, everything, manage

---

[19]Id. at 7:13-8:7

[20]Id. at 8:10-13.

[21]Id. at 17:12-23:13.

[22]Id. at 18:5-7.

it, pay the people, and, you know, that could be not fair
to me.  That is not just you put the property and you
sell it right away.  When you -- they come to you, they
try steal it from you.[23]

Defense counsel argued that in United States v. Jimenez, 600 F.2d

1172 (5th Cir.), cert. denied, 100 S. Ct. 216 (1979), the Fifth

Circuit held that ordering the defendant to reimburse the CJA Trust

fund as a condition of probation was an unreasonable condition of

the sentence.[24]  At the conclusion of the hearing the court stated

that an order of reimbursement would require the defendant to pay

the CJA rate,[25] the court ordered defense counsel to submit time

sheets under seal by the close of business on March 20, 2020,[26] and

to file a motion for continuation of appointment of counsel by

March 27, 2020.[27]

On March 27, 2020, the Federal Public Defender's Office filed

Ex Parte Motion for Public Defendants' Office to Continue

Representation on Appeal (Docket Entry No. 118).

---

[23]Id. at 20:5-14.

[24]Id. at 21:24-22:3.

[25]Id. at 21:14-15.

[26]Id. at 20:16-17.

[27]Id. at 22:23-23:14.

## II.  **Standard of Review**

The Sixth Amendment of the United States Constitution declares that every criminal defendant shall "have the Assistance of Counsel for his defence."  United States Constitution. Amend. VI.  Congress enacted the CJA to facilitate this constitutional guarantee.  18 U.S.C. § 3006A.  Pursuant to the CJA, the United States must appoint and bear the expense of counsel "for any person financially unable to obtain adequate representation."  18 U.S.C. § 3006A(a). See also Fed. R. Crim. P. 44(a) ("A defendant who is unable to obtain counsel is entitled to have counsel appointed to represent the defendant at every stage of the proceeding from initial appearance through appeal, unless the defendant waives this right.").

Title 18 U.S.C. § 3006A(b), dealing with the adequate representation of criminal defendants states that:

> Unless the [defendant] waives representation by counsel, the United States magistrate or the court, if satisfied after appropriate inquiry that the [defendant] is financially unable to obtain counsel, shall appoint counsel to represent him.

Section 3006A(c) states additionally that:

> If at any time after the appointment of counsel the United States magistrate judge or the court finds that the person [for whom counsel was appointed] is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate.

Section 3006A(f) states in turn:

> Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid . . . to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

The Fifth Circuit has stated that these three subsections of 18 U.S.C. § 3006A

> all of which deal with the conditions under which an apparently indigent defendant must provide all or part of his own counsel's fees, are to be read in pari materia insofar as they describe the manner of inquiry required of the Magistrate or court and the standards to be applied in determining the defendant's financial ability to provide for his own representation. Thus we think it clear that the reference to "funds available for payment" in subsection (f) refers solely to circumstances in which funds would have been available for payment for representation. Moreover, a finding that such funds are available "from or on behalf of a person furnished representation" under subsection (f) must be predicated upon an "appropriate inquiry," as in subsection (b).

United States v. Bursey, 515 F.2d 1228 1236 (5th Cir. 1975).

Financial inability to obtain adequate representation has been held to be "a less stringent requirement than is indigency." United States v. Foster, 867 F.2d 838, 839 (5th Cir.), cert. denied, 109 S. Ct. 3221 (1989). The CJA requires the court "to make an appropriate inquiry into the defendant's financial status to determine whether the defendant is entitled to appointed counsel." Id. at 841. While no particular method of determining whether the defendant is financially able to obtain adequate representation is required by the CJA, the burden of proof is on the defendant to establish that his financial situation prevents

him from securing adequate counsel.  <u>Id.</u>  Each factual situation

must "be weighed by the trial judge."  <u>Bursey</u>, 515 F.2d at 1239.

<u>See also</u> <u>United States v. Barcelon</u>, 833 F.2d 894, 897 (10th Cir.

1987) ("'Appropriate  inquiry'  necessarily  varies  with  the

circumstances  presented,  and  no  one  method  or  combination  of

methods  is  required.").   <u>See also</u>  7A Guide  to  Judiciary  Policy

§ 210.40.30(d) (counseling courts to consider "all . . . available

data bearing on the person's financial condition").

        To issue a reimbursement order a court must find "that there

are specific funds, assets, or asset streams (or the fixed right to

those funds, assets or asset streams) that are (1) identified by

the court and (2) available to the defendant for the repayment of

the court-appointed attorneys' fees."  <u>United States v. Moore</u>, 666

F.3d 313, 322 (4th Cir. 2012).  A fund or asset is "available to"

the defendant if it is "readily identifiable" and not based on

speculation.  <u>Id.</u>  Availability is a "fact-specific analysis" and

"may be based on identified funds and assets, even if those assets

will not become liquid until a future date."  <u>Id.</u> at 324.  <u>See also</u>

<u>United States v. Mena-Barraza</u>, No. EP-13-CR-1726(18)-KC, 2015 WL

1980702, *7 (W.D. Tex. April 30, 2015) (citing <u>Moore</u>, 666 F.3d at

322,  for  the  conclusion  that  "the  statute  clearly  requires  a

<u>finding</u> of a defendant's ability to make payments as a condition

precedent to an order of reimbursement").

Availability is not limited only to currently liquid assets at the time reimbursement is ordered. Instead, a repayment order may be based on identified funds and assets, even if those assets will not become liquid until a future date. Moore, 666 F.2d at 324. The crucial factor in complying with the statutory mandates in § 3006A(c) ("the court finds that the person is financially able") and § 3006A(f) ("the court finds the funds are available for payment") is that the court make a finding on the record identifying the specific assets "available" for reimbursement of attorneys' fees and how those assets qualify the defendant as financially eligible to pay. See Mena-Barraza, 2015 WL 1980702, at *11 ("The liquidity of a defendant's assets is relevant in determining whether funds are 'available' under § 3006A(f).").

## III. Analysis

Defendant's failure to timely and accurately disclose his financial assets raises two related issues for the court's consideration. First, as a threshold matter, the court must determine whether defendant's current financial situation renders him eligible for appointed counsel, and, if not, whether pragmatic considerations nevertheless weigh against terminating defendant's current counsel on appeal. Second, the court must determine whether defendant presently has assets available to repay the government for all or some of the costs of his legal defense.

## A.   Defendant's Eligibility for Appointed Counsel

Because defendant bears the burden of establishing his financial inability to obtain counsel, see Foster, 867 F.2d at 841, he has the "responsibility of providing the court with sufficient and accurate information upon which the court can make an eligibility determination." 7A Guide to Judiciary Policy § 210.40.20(f).  Defendant's failure to meet this obligation and his repeated failures to provide accurate information about either the value of his home or the fact that he owns vacant lots raise serious concerns regarding his overall credibility.  Other courts have denied CJA counsel to defendants that have provided similarly inaccurate, incomplete, or evasive explanations regarding their financial circumstances.  See Barcelon, 833 F.2d at 897 n. 5 (collecting cases).

The only argument defendant raises as to why the court should still find him eligible for free legal services under the CJA is that he has no cash on hand to pay an attorney and the real property assets he owns are not liquid.  But as the court observed during the show cause hearing:

> He's had the property, he could have sold the property anytime.  If he had listed in his -- if he had listed it honestly in the form -- just a minute -- in the form he filed with the magistrate judge, the magistrate judge might have cautioned him that he needed to sell one or both of the properties.  His failure to do so has put him in the current situation.[28]

---

[28]Id. at 19:22-20:3.

Defendant's response that he'd like to sell the property but has had no takers, is belied by his statements that he cannot sell the property right away because he might not receive what he perceives to be a fair price.

Based on the evidence included in the Addendum to the PSR regarding defendant's ownership of real property valued collectively at over $800,000.00, and defendant's testimony at the show cause hearing, the court finds that the defendant is the sole owner of the real property at issue, that he therefore has the right to sell or encumber the property at his discretion, and that the defendant has a present ability to pay for his representation. See Jimenez, 600 F.2d at 1174 (recognizing that the statute is written in present tense).

Nevertheless, the fact that the defendant is presently able to afford counsel does not necessarily mean that the court should terminate defendant's counsel prospectively on appeal. Section 3006A(c) of the CJA specifically provides that a court "may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate." 18 U.S.C. § 3006A(c) (emphasis added). "Deciding whether to remove counsel after appointment, as distinguished from deciding whether to initially appoint counsel, raises unique problems and concerns for a court. The CJA therefore affords significant discretion to courts in deciding whether the interests of justice will be met by removing court-appointed counsel. The Court finds that the interests of justice weigh against terminating defendant's

court-appointed counsel. Defendant's current counsel is familiar with the trial record, and the facts of this case. It would serve neither defendant nor the interests of judicial efficiency for the court to terminate defendant's counsel at this late stage in the proceedings. Moreover, the assets that defendant has disclosed are illiquid in nature. As a result, it would likely take time for defendant to generate sufficient cash to satisfy a private retainer agreement, and defendant would, at least in the interim, be without counsel on appeal. Out of an abundance of caution, the court declines to terminate defendant's court-appointed counsel despite his substantial assets. See Barcelon, 833 F.2d at 897–98 (noting that "where the bare listing of the applicant's financial position discloses marginal liquidity," a court should consider appointing counsel and requiring defendant to repay in whole or in part the costs of her legal defense) (citing Wade v. Lockhart, 763 F.2d 999, 1001 (8th Cir. 1985) (holding that a defendant's one-third interest in 182 acres of land did not automatically defeat his claim for appointed counsel on appeal where the defendant represented to the trial court that he could not obtain any benefit from the property for several months); and United States v. Coniam, 574 F. Supp. 615, 617 (D. Conn. 1983) (denying government's motion to terminate CJA counsel without prejudice where the evidence demonstrated that the defendant did not presently have the necessary cash to pay a retainer and he would subsequently reimburse the government)). Accordingly, defendant's Ex Parte Motion for Public Defender's Office to Continue Representation on Appeal will be granted.

**B.    Appropriateness of Reimbursement Order**

Having determined that CJA counsel should continue to represent defendant on appeal, the court must now decide whether defendant has funds available to bear some or all of the costs of his legal defense.  In particular, the court must determine whether "there are specific funds, assets, or asset streams (or the fixed right to those funds, assets or asset streams) that are (1) identified by the court and (2) available to the defendant for the repayment of the court-appointed attorneys' fees."  Moore, 666 F.3d at 322.  Defendant possesses three assets of substantial value, i.e., his ownership interests in the Yale Street Property, the Larkin Street Property, and the Brock Street Property.  Within the context of this case, the question is whether any of these properties is presently "available" within the meaning of § 3006A(f).

The liquidity of a defendant's assets is relevant in determining whether funds are "available" under § 3006A(f). Moore, 666 F.3d at 324.  "[A]vailability is not limited only to currently liquid assets at the time reimbursement is ordered." Id.  To the contrary, "a repayment order may be based on identified funds and assets, even if those assets will not become liquid until a future date." Id.  Assets may not be available "[i]f by their nature [those] assets cannot be timely reduced to cash and cash is required. . . ." Barry v. Brower, 864 F.2d 294, 300 (3d Cir. 1988)

(finding the defendant was unable to leverage his home equity to obtain legal counsel)). "In some cases, liquidation of assets may be required." Id. at 299. In Barry the Third Circuit found the defendant's home valued at $80,000 did not disqualify him from public counsel because evidence showed that the six private attorneys recommended by the public defendant's office declined to take a security interest in his house in lieu of legal fees. Id. at 300. Moreover, the defendant could not sell his home because it was held jointly with his wife who refused to sell or encumber the home. Id. at 297 and 300. Finally, the defendant's debts exceeded his assets, as he owed an $85,000 fine to the state. Id. Accordingly, the court concluded that the defendant did not have funds available to pay his legal costs. Id. at 300.

In contrast, the defendant in United States v. Fincher, 593 F.3d 702 (8th Cir. 2010), was required to sell his property, despite his wife's dower interest, because the value of the property encumbered by the dower interest was still sufficient to cover the defendant's legal costs. Id. at 707. Other courts have found defendants able to afford legal counsel because they held substantial equity in their property. See, e.g., United States v. Simmers, 911 F. Supp. 483, 486-87 (D. Kan. 1995) ("While the defendant's primary asset is not liquid, the equity in his home is substantial . . . The defendant has not established extreme hardship in the event of the liquidation or mortgage of the

asset."); <u>United States v. Bedoya</u>, No. 89 Cr. 803, 1990 WL 194934, at *3 (S.D.N.Y. November 28, 1990) (finding the "defendant has equity value in the six unit apartment building").

The court first discusses the status of the defendant's property. The defendant provided no indication at the hearing that he is not the sole and exclusive owner of the three properties, that the properties are unencumbered by any mortgage, or that the value of the properties does not greatly exceed the amount of his legal expenses in this case. <u>See</u> <u>United States v. Konrad</u>, 730 F.3d 343, 346 n. 1 (3d Cir. 2013) (noting that the defendant's home was not an available asset because it was subject to a $230,000.00 mortgage). Thus, the three properties appear to be available assets under § 3006A(f).

Although courts generally disfavor an interpretation of the CJA that would require a defendant to sell or mortgage his primary residence in order to reimburse the government for legal fees, the defendant did not raise this issue at the hearing. The court observes, however, that the Yale Street Property appears to be subject to the Texas homestead exemption, and therefore not within the purview of § 3006A(f). <u>See</u> Tex. Const. art. XVI, § 50. <u>See also</u> Tex. Prop. Code Ann. § 41.001(a) ("A homestead . . . [is] exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property."). For these reasons, the court declines to base any reimbursement order on

defendant's ownership interest in the Yale Street Property.

The Brock Street Property and the Larkin Street Property are, however, assets not eligible for homestead protection that defendant appears to own free and clear of any encumbrances, and the value of those properties is more than sufficient to cover defendant's legal expenses in this case, including the costs he is expected to incur on appeal. Accordingly, the Court finds that defendant possesses more than sufficient assets to reimburse the government for the costs of his legal defense, including the cost of his appeal, without suffering extreme financial hardship. See Konrad, 730 F.3d at 348 ("The District Court properly ordered Konrad to pay the cost of court-appointed counsel, because Konrad's net financial resources exceed the amount needed for the necessities of life."); Fincher, 593 F.3d at 707 (affirming district court's reimbursement order where, "[a]lthough there [was] no evidence that Fincher had the income and cash flow to pay for counsel, he had substantial assets other than his homestead—including the forty acres of non-homestead property, firearms, machinery, and tools — that he could have used to pay for his defense"); Bedoya, 1990 WL 194934, at *3 (ordering reimbursement where "defendant's vague assertions concerning the status of his properties [were] clearly insufficient in view of the fact that he previously misrepresented the extent of his assets on his sworn financial affidavit").

## IV. Conclusions and Order

For the reasons stated in § III.A. above, defendant's Ex Parte Motion for Public Defender's Office to Continue Representation on Appeal, Docket Entry No. 118, is **GRANTED**. Accordingly, the defendant shall be entitled to retain his CJA appointed counsel during the pendency of his appeal.

For the reasons stated in § III.B, above, the United States' Motion for an Order to Show Cause, Docket Entry No. 96, is **GRANTED**. Defendant is **ORDERED** to tender to the Clerk of this Court by no later than October 31, 2020, a check or money order in the amount of  $ 38,135.16  to reimburse the Criminal Justice Act Trust Fund for the cost to date of his court appointed counsel.

It is further **ORDERED** that at the conclusion of the defendant's appeal, defense counsel shall submit under seal time sheets, costs expended on appeal, and any argument why the defendant should not also be required to reimburse the Criminal Justice Act Trust Fund for those amounts.

**SIGNED** at Houston, Texas, on this 9th day of April, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE